In re MERIDIAN GROUP, INC., Debtor.

Bankruptcy No. 97–10336.

United States Bankruptcy Court, D. Vermont.

Sept. 3, 1997.

B. Lewis and R.J. Obuchowski, of Obuchowski Law Office, Bethel, VT, for R.J. Obuchowski, Chapter 7 Trustee.

D.J. Johnson, Burlington, VT, Special Counsel pro se.

## MEMORANDUM OF DECISION APPROVING RETENTION

FRANCIS G. CONRAD, Bankruptcy Judge.

Trustee asks us to approve,[1] *nunc pro tunc*, his retention of Special Counsel to assist him in the litigation of a shareholders derivative action removed here from Rutland Superior Court upon Debtor's filing of a petition for relief under Chapter 7 of the Bankruptcy Code. The services for which retention is asked have already been completed; and apparently competently. We approved a

settlement and compromise of the removed action, Russell v. Bohlig, Adv. Proc. No. 97–1037 on July 14, 1997.

Trustee's motion asks that he be "authorized to employ Special Securities and Settlement Counsel ... with compensation to be paid as an administrative expense in such amounts as this Court may hereinafter determine and allow." Document No. 54–1.[2] That motion is granted. The pleadings in connection with Trustee's motion, however, are mainly devoted to persuading us that the $350 per hour rate sought by special counsel is an appropriate rate, despite the fact that no application for allowance of fees has been filed. We are not persuaded.

Trustee was appointed in this case on March 7, 1997. His original Application to retain Special Counsel, Document No. 49–1, was dated Thursday, May 15, 1997, and filed on Monday, May 19. A later Motion, dated May 22, and filed May 23, amended the earlier application to seek retention *nunc pro tunc* to May 14. Document No. 54–1. The grounds given for *nunc pro tunc* retention are that "it was necessary for special counsel to review documents and prepare for Rule 2004 examinations that have taken place throughout the week of May 19, 1997." *Id.*

Trustee and Special Counsel both concede that the $350/hour rate exceeds the going rate for Vermont attorneys. The highest rate we have ever approved previously in a Vermont case was $250 an hour for a debtor's counsel in a recent Chapter 11 filing. We approved that hourly rate reluctantly, because there was no opposition, despite the fact that it was about two times the going rate in Vermont. It was, however, a case with national and possibly international financial significance.

■ At the outset, we announce a categorical rule that we will apply in this and all later cases. Absent extraordinary circumstances, *nunc pro tunc* fee applications will

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to this Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A) and (B). This Memorandum of Decision constitutes findings of fact and

conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bkrtcy.P. 7052.

2. References to items by "Document No." refers to the number assigned to the document on the docket in the main case, unless otherwise specified.

be paid at the going rate for bankruptcy practitioners in Vermont;[3] fees in excess of that rate will be approved only for post-retention work, and only after hearing on their applications.

■ We turn now to the more specific concerns we have about Special Counsel's retention. Special Counsel, whose *bona fides* are indeed impressive, recites a number of cases from around the nation in which, as attorney for various plaintiffs, he won settlements of millions of dollars. Several distinctions are apparent. First, many of those cases were national cases. This is a Vermont case involving a mostly Vermont dispute. Second, the settlement figure here was $450,000, not millions, and $50,000 of that was earmarked for estate administrative costs. Third, Special Counsel did not function as plaintiffs' attorney. More specifically, he was not required to investigate, prepare, and file the complaint. Rather, his task here was to assist Trustee in evaluating the merits of the shareholders derivative suit that devolved to Trustee upon Debtor's filing. That task is far less complex than the role of plaintiffs' attorney.

Fourth, and related to the prior concern, it does not appear to us that this is a particularly complex matter, requiring resources beyond the ken of Trustee. Bankruptcy practitioners can fairly make the claim that our slice of the law is the most complex there is. The Code itself has to rank as one of the most abstruse, inartfully worded bodies of law existing on the planet. To complicate matters even further, every other complicated body of law regularly intrudes into bankruptcy, including taxation, securities law, family law, environmental law, constitutional law, employment law, admiralty, etc. Accordingly, we reject out of hand the notion that there is any more specialized body of law that entitles its practitioners to be paid more than bankruptcy lawyers, of whom Trustee is one of the best.

Finally, we want to welcome Special Counsel, recently relocated from Philadelphia, to Vermont. While it may be the case that $350/hour is a good deal in Pennsylvania and the rest of the nation, it's not in Vermont. The Vermont bar is comprised of attorneys who could work anywhere they want, but choose to live here because of the quality of life. During our tenure on the Court, we have traveled widely, serving in jurisdictions from coast to coast and from the Canadian border to the United States of Mexico. It has been our observation that the Vermont bar is second to none in the quality, consistency, and practicality of its members.

The privilege of practicing law in Vermont involves a trade-off, as those of us who have previously chosen to live here fully understand. Vermont is ensconced at the top of various rankings by national media of the best place in the country to raise children. We don't make as much money, but we live a lot better, and, in many cases, longer.

To summarize, Meridian is a Vermont case, it's in a Vermont Court, the complexities involved are fully within the competence of members of the Vermont bar, and we see, on the record before us, no reason why new immigrants should be entitled to a premium because they are from somewhere else. We will give Special Counsel a choice: accept the prevailing hourly rate of $125 for experienced bankruptcy practitioners or, alternatively, request an evidentiary hearing and prove the appropriate hourly rate.

---

**3.** The going rate for experienced bankruptcy practitioners in Vermont is $125 per hour.